Filed 7/19/21  N.B. v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| N.B., | C092585 |
| Petitioner, | (Super. Ct. No. 34201700213972CUPOGDS) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| RIVER DELTA UNIFIED SCHOOL DISTRICT et al., | |
| Real Parties in Interest. | |

This extraordinary writ proceeding arises out of a fourth amended complaint filed by two former high school students who raise separate claims arising out of alleged sex-based harassment by the same coach and overlapping teammates.  Petitioner N.B. challenges the trial court's order sustaining real party in interests' demurrer to his claims for sexual harassment and retaliation under title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.) (Title IX).  The trial court concluded petitioner did not

1

establish the school district's deliberate indifference to any sex-based harassment, and deliberate indifference was not a permissible theory to support a claim for retaliation under Title IX. We conclude deliberate indifference may be used in a cause of action for retaliation under Title IX, and petitioner's allegations were sufficient to survive demurrer. We shall issue a writ of mandate compelling the superior court to vacate its order and enter a new order overruling the demurrer as to petitioner.

## I. BACKGROUND

The fourth amended complaint was brought by petitioner and J.D. against River Delta Unified School District, its superintendent, plaintiffs' former principal, and plaintiffs' former coach. Plaintiffs' first and second causes of action alleged separate claims for sex-based harassment and retaliation against the District under Title IX. The third and fourth causes of action were asserted only by petitioner N.B. against all defendants and alleged state law claims for negligent supervision and hiring that are not at issue in this proceeding.

Because, as we will discuss, J.D.'s factual allegations relate to the District's knowledge with respect to petitioner's claims, we will begin with a summary of them as they relate to this issue. J.D. was a member of the football team. He alleges his coach would talk about sex and ask " 'how far' " team members had gotten with their girlfriends, questioning them about specifics. If team members admitted they were not having sex with their girlfriends, the coach asked " 'why not' " and " 'what are you waiting for?' " J.D. claimed he was singled out for ridicule for admitting to being a virgin. The complaint alleges the coach joked about J.D.'s virginity and "inferred to all present that because [J.D.] was still a virgin he was unmanly, not macho, something contemptible, and so worthy of mistreatment." J.D. also alleges football players became members of the "Brotherhood."

The complaint alleges J.D.'s mother met with the principal and complained that her son was being bullied and sexually harassed in violation of the law and the student

2

handbook. The complaint specifically alleges she reported J.D. had been singled out by the coach for his virginity and refusal to actively participate with the Brotherhood and the team's discussions of sexual exploits. The team members were texting "FUCKJ[.D.][Year]" in their group chat. J.D.'s mother reported that a teammate, R.T., had been fondling her son's testicles during practice. J.D. alleges he told the principal that "he was not permitted to stand up and complain." J.D.'s mother explained that her son felt degraded, humiliated, anxious, and fearful, and this was causing a negative impact on his participation in football and his academic performance. His mother specifically named the team members involved.

The complaint alleges the principal spoke to the coach. At the next practice, the coach stared at J.D. while explaining that " 'some people' " are " 'tattle-tales' " and " 'sometimes people don't know how to take a joke and you can't say things anymore in group chat that could be perceived as wrong, so knock it off.' " J.D. alleges the coach modified a contact drill to have players almost twice his size line up and run into him repeatedly. This occurred "practically daily" and caused severe bruising.

J.D.'s mother met again with the principal and complained about the modified drill and continued harassment. The complaint alleges the principal took no further action other than to explain to J.D. that he needed to have " 'thicker skin.' "

In the same month as J.D.'s mother's meetings with the principal, petitioner N.B. joined the basketball team, which the football coach also helped coach. As he had with the football team, the coach encouraged discussion of sexual exploits and engaged in it himself.

Petitioner alleges the coach singled him out for being a virgin and failing "to adequately explain why he was not having sex with his girlfriend." The coach would ask petitioner, " 'how far did you get last night with [her],' " " 'last weekend,' " " 'when are you going to have sex,' " " 'what's wrong with you,' " and " 'what are you waiting for?' " Petitioner alleges the coach's "harassing conduct and comments led other

3

Brotherhood team members to perceive there was something 'different,' non-macho, and/or contemptible about [him]—including that he may and/or must be 'gay.' "

Several months into basketball season, in an unsupervised locker room after practice, petitioner was held down by two teammates while a third, K.N., sat naked on petitioner and rubbed his penis all over petitioner's face. These teammates had also been members of the football team and the Brotherhood, and one of the teammates who held petitioner down, R.T., was the same individual who had been accused of repeatedly fondling J.D.'s testicles.

The coach reported the incident to the administration, who reported it to the Yolo County Sheriff's office. The three teammates were charged, and K.N. was convicted of a felony and eventually expelled from school. The two teammates who held petitioner down were convicted of misdemeanors and suspended for two days. They were allowed to be around petitioner, where they re-enacted the assault. They also labeled him the "snitch" who got them arrested. The principal emailed the staff to watch for ongoing harassment and retaliation. R.T. posted an image of a penis superimposed onto petitioner's face in the team group chat. Petitioner alleges that, during class time, students would reenact his assault and cry out in a " 'baby voice' " " 'Stop it! Stop it!' " He was also called " 'Slap-Dick-Face' " and " 'fag' " during class. Petitioner alleges he or his mother reported all of this to the principal.

Petitioner alleges he reported to the principal's office, "upset and distraught . . . on practically a daily basis." He missed school, stopped playing sports, and became suicidal. Both plaintiffs allege they withdrew from the school before the end of the school year.

The defendants except the coach demurred to the first two causes of action in the fourth amended complaint. Real parties in interest argued petitioner failed to state facts sufficient to constitute either cause of action. They also argued the plaintiffs were improperly joined in the action.

4

The trial court sustained the demurrer without leave to amend.

Petitioner sought review in this court by filing a petition for writ of mandate, prohibition, or other appropriate relief.[1]

We issued an order to show cause why the relief prayed for in this proceeding should not be granted. Real parties in interest filed a return.

## II. DISCUSSION

### A. *Standard of Review*

Because real parties in interest demurred to only half of petitioner's causes of action, there is no final judgment as to his claims. Nonetheless, we may consider interim rulings on a petition for an extraordinary writ when it appears the trial court has deprived the petitioner of an opportunity to plead a substantial part of his case, and the ruling creates a likelihood that two trials will be necessary rather than one. (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 894; *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 319.) "We thus consider de novo whether the trial court, by granting the demurrer to the first and second causes of action without leave to amend . . . , has erred in its rulings and prejudiced [petitioner] by depriving [him] of a substantial portion of [his] case." (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1223.)

"The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citation.] The court does not, however, assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 966-967.) "To survive a demurrer, the

---

[1] Petitioner requested that we consider the propriety of the dismissal of J.D.'s claims. We will not do so. J.D. did not file a petition for writ of mandate; he filed a notice of appeal and has a plain, speedy, and adequate remedy. (Code Civ. Proc., § 1068.) We will address J.D.'s claims after they are fully briefed.

complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872.) Additionally, "[p]leadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears." (*Speegle v. Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42, superseded by statute on another point as stated in *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 269.)

As petitioner notes, "[s]trict local rules of pleading cannot be used to impose unnecessary burdens upon rights of recovery authorized by federal laws." (*Brown v. Western R. of Alabama* (1949) 338 U.S. 294, 298.) Previously, we have held "that the state courts of California should apply federal law to determine whether a complaint pleads a cause of action under [title 42 United States Code] section 1983 sufficient to survive a general demurrer." (*Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 563.) We do not think there is any difference between the applicable state and federal standards that would alter the outcome of this petition.

Under the Federal Rules of Civil Procedure (28 U.S.C.), "a plaintiff need only provide 'enough facts to state a claim to relief that is plausible on its face.' [Citation.] All factual allegations are accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. [Citation.] The standard provides for liberal treatment of a plaintiff's complaint at the pleading stage." (*Austin v. University of Oregon* (9th Cir. 2019) 925 F.3d 1133, 1137.) On appeal, a decision to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure (28 U.S.C.), like the sustaining of a demurrer under California law, is reviewed de novo. (*Manzarek v. St. Paul Fire & Marine Ins. Co.* (9th Cir. 2008) 519 F.3d 1025, 1030; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

6

*B.      First Cause of Action for Sex-Based Harassment*

Title IX mandates, with certain exceptions not relevant here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." (20 U.S.C. § 1681(a).)  "Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination." (*Jackson v. Birmingham Board of Education* (2005) 544 U.S. 167, 173.)

In *Gebser v. Lago Vista Independent School District* (1998) 524 U.S. 274 (*Gebser*), the United States Supreme Court explained that in cases that do not involve an official policy of a recipient entity, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." (*Id*. at p. 290; see also *id*. at p. 277 ["damages may not be recovered . . . unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct"].)  That case involved alleged misconduct by a teacher.  (*Id*. at p. 277.)

One year later, in *Davis v. Monroe County Board of Education* (1999) 526 U.S. 629 (*Davis*), the court held a Title IX funding recipient can be liable for student-on-student harassment as well, "but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities" and "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." (*Id*. at p. 633; see also *id.* at p. 650 ["funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school"].)

The four requirements for the imposition of school district liability under Title IX for student-on-student harassment are: (1) the school district " 'exercises substantial control over both the harasser and the context in which the known harassment occurs"; (2) "the plaintiff suffers 'sexual harassment . . . that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school' "; (3) the school district must have " 'actual knowledge' of the harassment"; and (4) " 'its deliberate indifference subjects its students to harassment.' " (*Reese v. Jefferson School Dist. No. 14J* (9th Cir. 2000) 208 F.3d 736, 739.) Here, petitioner alleges harassment by a coach and students. This showing is sufficient to state a claim based on harassment by both or either. (*Karasek v. Regents of University of California* (9th Cir. 2020) 956 F.3d 1093, 1105; *Jennings v. University of North Carolina* (4th Cir. 2007) 482 F.3d 686, 695, 700.) However, "[t]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity. Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment." (*Davis, supra*, 526 U.S. at p. 653.)

Petitioner's first cause of action is based on two different theories of liability: (1) deliberate indifference to known acts of harassment involving co-plaintiff J.D. that caused petitioner to be subjected to harassment, and (2) deliberate indifference to petitioner's complaints of harassment. (See *Escue v. Northern Oklahoma College* (10th Cir. 2006) 450 F.3d 1146, 1152-1153 [explaining alternate theories of liability].) His petition focused on the former theory and does not address the theories separately. For this reason, we will limit our discussion to the first theory of liability as it is dispositive of his petition.

*1.    Substantial Control*

The first requirement is that the District exercised substantial control over the harassers and the context in which the harassment occurs.  (*Davis, supra*, 526 U.S. at p. 646.)  Here, the alleged misconduct occurred on school grounds and either during school hours or during a school activity.  This is sufficient to satisfy the requirement.  (*Ibid*.)

*2.    Harassment*

The requirement that a school district can be held liable in damages only where the plaintiff suffers "sexual harassment . . . that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school" is a multi-part inquiry.  (*Davis, supra*, 526 U.S. at p. 650.)  The trial court concluded that, "at least prior to the locker-room incident, the [complaint] contains only vague and sweeping conclusions regarding sexual orientation discrimination, but does not evince any particular and specific harassment based on sexual orientation."  The court's ruling expresses no view on whether the behavior including the locker-room incident would be sufficient.

*a.    On the Basis of Sex*

We begin with whether the alleged misconduct was "on the basis of sex."  (20 U.S.C. § 1681(a).)  A plaintiff can demonstrate sex discrimination for purposes of Title IX "by showing that he or she was mistreated for failing to conform to traditional sex stereotypes."  (*Chisholm v. St. Marys City School District Board of Education* (6th Cir. 2020) 947 F.3d 342, 351.)  Here, petitioner alleges his coach singled him out for failing to adequately explain his virginity—" '*what's wrong with you*?' "—and that his teammates also singled him out on this basis, perceived him as "non-macho," and inferred that he must be gay.  (Italics added.)  "We do not agree that [the allegations] are mere conclusions.  [Petitioner] was only required to plead ultimate facts and [he] has done so.  Whether [he] can produce at trial, or in response to a motion for summary judgment, evidence that will in fact support all or any of those allegations . . . is another

9

matter." (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1098; see also *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 ["the complaint ordinarily is sufficient if it alleges ultimate rather than evidentiary facts"].) Further, the inference that his assailants perceived he was non-macho and gay is adequately supported in the pleadings with those facts expressly alleged. Specifically, we may infer that after the coach suggested there was something wrong with petitioner because he did not have sex with his girlfriend, his teammates who watched this repeated behavior adopted some of this reasoning. After he was assaulted, petitioner alleges students called him "fag" and affected a "baby voice" to imitate his reaction to being assaulted. We conclude the complaint is sufficient to allege the misconduct directed at petitioner was based on his failure to conform to a traditional sex stereotype.

           *b.*       *Severe, Pervasive, and Objectively Offensive*

"Whether gender-oriented conduct rises to the level of actionable 'harassment' . . . 'depends on a constellation of surrounding circumstances, expectation, and relationships,' [citation], including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." (*Davis, supra*, 526 U.S. at p. 651.) Additionally, "[c]ourts . . . must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. [Citation.] Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." (*Id*. at pp. 651-652.) Federal courts "have observed that 'the

10

severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact,' [citation]; and it is even less suited for dismissal on the pleadings." (*Doe v. School District No. 1, Denver, Colorado* (10th Cir. 2020) 970 F.3d 1300, 1312.)

In this instance, petitioner alleges more than simple teasing and name-calling. He alleges he was targeted for questioning about his sex life by his coach due to his virginity. (See *Jennings v. University of North Carolina*, *supra,* 482 F.3d at p. 697 ["Any age disparity between the harasser and his victim is also relevant to gauging whether there was a hostile or abusive sexual environment"].) Further, petitioner alleges his teammates also singled him out and two of them held him down while a third sat naked on petitioner and rubbed his penis all over petitioner's face. Later, two of the participants reenacted this assault. He alleges students called him "fag" and reenacted his assault during class time, and that he reported to the principal's office "on practically a daily basis." (See *Doe v. School District No. 1, Denver, Colorado*, *supra*, 970 F.3d at pp. 1310-1311 [considering potentially retaliatory actions as part of sexual harassment claim].) Petitioner has adequately alleged facts to support a claim for sex-based harassment that was severe, pervasive, and objectively offensive.

### c.     Denial or Exclusion from Educational Opportunities

This discrimination must "effectively bar[] the victim's access to an educational opportunity or benefit." (*Davis, supra*, 526 U.S. at p. 633.) Physical exclusion is unnecessary. (*Id*. at p. 651.) "Rather, a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." (*Ibid*.)

This case alleges harassment that caused petitioner to stop playing sports, become suicidal, and withdraw from the school. Petitioner has adequately alleged harassment that caused the denial of educational opportunities.

11

*3.      Actual Knowledge*

A school district is liable in damages only where it has "actual knowledge" of the harassment.  (*Davis, supra*, 526 U.S. at p. 650.)  In *Gebser*, the U.S. Supreme Court explained the actual knowledge requirement and announced that damages may not be recovered unless an official "who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond." (*Gebser, supra*, 524 U.S. at p. 290; see also *Davis*, *supra*, at p. 633 [concluding funding recipient may be liable where it "acts with deliberate indifference to known acts of harassment in its programs or activities"].)  Notice to a high school principal is sufficient for these purposes.  (*Doe v. School Bd. of Broward County, Fla*. (11th Cir. 2010) 604 F.3d 1248, 1255.)  The trial court was focused on the lack of allegations in the complaint to suggest there was actual knowledge of any purported harassment of *petitioner* prior to the locker room incident.  The focus on petitioner's harassment to the exclusion of co-plaintiff J.D.'s in evaluating the knowledge requirement was unwarranted.  "By noting that actual knowledge of discrimination in *the recipient's program* is sufficient, the [*Gebser*] Court implicitly decided that harassment of persons other than the plaintiff may provide the school with the requisite notice to impose liability under Title IX." (*Escue v. Northern Oklahoma College*, *supra*, 450 F.3d at p. 1153; see also *Gebser*, *supra*, at p. 291 ["complaint from parents of other students charging only that [teacher] had made inappropriate comments during class, which was plainly insufficient to alert the principal to the possibility that [teacher] was involved in a sexual relationship with a student"]; *Doe v. School Bd. of Broward County, Fla*., *supra*, at p. 1257 ["no circuit has interpreted *Gebser*'s actual notice requirement so as to require notice of the prior harassment of the

12

Title IX plaintiff *herself*"].)[2]  Whether or not co-plaintiff J.D.'s allegations were sufficient to establish a claim on his own behalf, the complaint clearly alleges that, at a minimum, the principal was informed that he had been targeted for his virginity and refusal to participate in the "Brotherhood," and that R.T. was fondling his testicles during practice.  At this stage, petitioner's allegations of actual knowledge of recent, similar acts of alleged sexual harassment by the same group of individuals was sufficient.  (See *Doe v. University of Tennessee* (M.D.Tenn. 2016) 186 F.Supp.3d 788, 807 [concluding actual knowledge was sufficiently alleged where "plaintiffs allege notice of a number of recent prior sexual assaults by UT football and basketball players, under similar circumstances as their own assault"]; see also *Hill v. Cundiff*, *supra*, 797 F.3d at p. 969 ["Title IX plaintiff must prove the funding recipient had actual knowledge that the student-on-student sexual harassment was severe, pervasive, and objectively offensive"].)  Petitioner pled actual knowledge of harassment sufficient to survive demurrer.

>    4.     *Deliberate Indifference*

"If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subjects' its students to harassment.  That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo'

---

[2]  Petitioner attempts to rely on Ninth Circuit authority holding that when a plaintiff alleges that a school's "official policy" violates Title IX, the school intentionally violates the statute, and actual knowledge and deliberate indifference is not required.  (*Karasek v. Regents of University of California*, *supra*, 956 F.3d at p. 1112.)  Though we do not apply the official policy framework to petitioner's allegations, we observe that the analysis set forth by the Ninth Circuit is similar to one many federal courts use in analyzing whether the actual knowledge requirement was met.  (See *Roe ex rel. Callahan v. Gustine Unified School Dist*. (E.D.Cal. 2009) 678 F.Supp.2d 1008, 1030 [compiling authorities] ["Title IX's third element is satisfied once an appropriate official has actual knowledge of a substantial risk of abuse of students, whether or not directed at Plaintiff specifically"]; but see *Hill v. Cundiff* (11th Cir. 2015) 797 F.3d 948, 969 [concluding "substantial risk" standard does not apply to student-on-student harassment].)

harassment or 'make them liable or vulnerable' to it." (*Davis, supra,* 526 U.S. at pp. 644-645.) The U.S. Supreme Court explained that we "should refrain from second-guessing the disciplinary decisions made by school administrators" and deliberate indifference occurs "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." (*Id.* at p. 648.) "In an appropriate case, there is no reason why courts, on a motion to dismiss . . . , could not identify a response as not 'clearly unreasonable' as a matter of law." (*Id.* at p. 649.) This does not appear to be such a case. According to the allegations in the complaint, the principal knew one of petitioner's attackers had been fondling J.D.'s testicles during practice, yet only spoke to the coach, and the coach only talked to the team about their group texts. The coach, meanwhile, let the behavior continue. Further, "it is not enough to try to help a student cope with the misbehavior of other students. . . . Deliberate indifference may be shown by a failure to act to halt the misbehavior." (*Doe v. School District No. 1, Denver, Colorado*, *supra*, 970 F.3d at pp. 1313-1314.) Petitioner has adequately pled the theory that a clearly unreasonable response to what the District did have actual knowledge of (the harassment of J.D.) made him vulnerable to the harassment he suffered. This is adequate to state a claim under a deliberate indifference theory. (*Doe v. University of Tennessee, supra*, 186 F. Supp.3d at p. 806; *Roe ex rel. Callahan v. Gustine Unified School Dist.*, *supra*, 678 F.Supp.2d at p. 1038.)

The trial court erred in sustaining the demurrer to petitioner's first cause of action.

C.      *Second Cause of Action for Retaliation*

Petitioner's second cause of action for violation of Title IX was based on alleged retaliation for reporting the misconduct.

"An allegation that the plaintiff was harassed for reporting misconduct can . . . suffice to state a claim for discrimination on the basis of sex if the misconduct reported is itself sex discrimination." (*Doe v. School District No. 1, Denver, Colorado*, *supra*, 970 F.3d at p. 1310; see *Jackson v. Birmingham Board of Education*, *supra*, 544 U.S. at p.

14

173 ["Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action"].)

The trial court concluded petitioner "has pled sufficient facts to establish a causal link between his complaints of harassment due to reporting the locker room assault and the adverse actions taken by *students* as a result thereof. Not only was the student retaliation close in time to the reporting of the incident, but various students themselves made expressly clear that their actions were in retaliation for [petitioner] being a 'snitch.' " But the trial court held that a deliberate indifference standard is insufficient to support a Title IX retaliation claim. This is incorrect. (See, e.g., *Sewell v. Monroe City School Board* (5th Cir. 2020) 974 F.3d 577, 586 [concluding retaliation claim not based on official policy requires deliberate indifference]; *Feminist Majority Foundation v. Hurley* (4th Cir. 2018) 911 F.3d 674, 695 ["an educational institution can be liable for acting with deliberate indifference toward known instances of student-on-student retaliatory harassment"]; *Doe v. University of Tennessee*, *supra*, 186 F.Supp.3d at p. 811 ["to the extent that Jane Doe V is able to show that UT had notice that she was suffering a hostile environment based on the threats the football players made to *her* and did not adequately respond, this is not inaction, but rather the condoning of retaliatory conduct that could form the basis for a retaliation claim against UT"].) The trial court's reasoning was based on the following statements in *Jackson v. Birmingham Board of Education*, *supra*, 544 U.S. 167: "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action. Retaliation is, by definition, an intentional act" and "retaliation presents an even easier case than deliberate indifference. It is easily attributable to the funding recipient, and it is always—by definition—intentional." (*Id.* at pp. 173-174, 183.) The U.S. Supreme Court made these statements in explaining that "deliberate indifference" in its prior authorities constituted intentional discrimination on

15

the basis of sex sufficient to impose liability under Title IX, and so did retaliation. (*Id*. at pp. 182-183.) In *Jackson*, a teacher alleged a school board had retaliated against him. (*Id*. at p. 171.) There was no need to analyze whether a deliberate indifference standard could be utilized in this scenario. These statements in *Jackson* have not been understood to preclude the applicability of a deliberate indifference analysis in a retaliation claim. (E.g., *Doe v. School District No. 1, Denver, Colorado, supra*, 970 F.3d. at pp. 1310-1311.)

Applying the deliberate indifference standard, we conclude petitioner adequately alleged a claim for retaliation. While the assault was reported to law enforcement, and the three teammates who participated in the assault each received some length of school suspension, petitioner alleges two of them were allowed to be in direct contact with him after two days. Then, they labeled him a "snitch" who got them arrested and reenacted the assault. Petitioner alleges other students reenacted the sexual assault and called him a "fag" during instructional time and in front of teachers. Petitioner alleges he reported all of this to the principal, but still ended up reporting to her office nearly every day distraught. At this stage, petitioner has adequately alleged the principal was aware that he was being retaliated against during school hours for reporting his alleged sex discrimination, and was ineffective enough at halting this misbehavior or shielding petitioner from it that his claims can survive the pleading stage. In other words, while he may not ultimately prevail, we cannot conclude the response was not clearly unreasonable as a matter of law. (*Davis, supra*, 526 U.S. at p. 649.) Title IX "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." (*Id.* at p. 648.) Nonetheless, "[d]eliberate indifference may be shown by a failure to act to halt the misbehavior." (*Doe v. School District No. 1, Denver, Colorado*, *supra*, 970 F.3d at p. 1314.) As with his first cause of action, the allegations that petitioner ultimately became suicidal and withdrew from school were sufficient to allege the retaliation effectively

barred petitioner's access to educational opportunities.  Thus, the trial court erred in sustaining the demurrer to petitioner's second cause of action.

## III.  DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order sustaining real parties in interests' demurrer to the fourth amended complaint without leave to amend, and to issue a new order overruling the demurrer as to N.B.'s claims.

Petitioner N.B. shall recover his costs in this original proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)


/S/

_____

RENNER, J.


We concur:


/S/

_____

HULL, Acting P. J.


/S/

_____

MAURO, J.