**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRANDON AUSTIN,
   *Plaintiff-Appellant*,

and

DOMINIC ARTIS; DAMYEAN
DOTSON,
   *Plaintiffs*,

v.

UNIVERSITY OF OREGON; SANDY
WEINTRAUB; CHICORA MARTIN;
ROBIN HOLMES; MICHAEL R.
GOTTFREDSON, all in their
individual capacities only,
   *Defendants-Appellees.*

No. 17-35559

D.C. Nos.
6:15-cv-02257-MC
6:16-cv-00647-MC

DOMINIC ARTIS; DAMYEAN
DOTSON,

*Plaintiffs-Appellants*,

and

BRANDON AUSTIN,

*Plaintiff*,

v.

UNIVERSITY OF OREGON; SANDY
WEINTRAUB; CHICORA MARTIN;
ROBIN HOLMES; MICHAEL R.
GOTTFREDSON, all in their
individual capacities only,

*Defendants-Appellees.*

No. 17-35560

D.C. Nos.
6:15-cv-02257-MC
6:16-cv-00647-MC

OPINION

Appeals from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted December 6, 2018
Seattle, Washington

Filed June 4, 2019

Before: Susan P. Graber, M. Margaret McKeown,
and Morgan Christen, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

### Civil Rights

The panel affirmed the district court's dismissal of a complaint brought by three male student athletes against the University of Oregon alleging the University discriminated against them on the basis of their sex in violation of Title IX and violated their due process rights in connection with the University's sexual misconduct proceedings.

Following the Supreme Court's guidance in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the panel held that Federal Rule of Civil Procedure 8(a), not the evidentiary presumption set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), provides the appropriate standard for reviewing, at the pleading stage, a motion to dismiss in a Title IX case.

The panel affirmed the district court's dismissal of the Third Amended Complaint because, putting aside mere conclusory allegations, the complaint failed to make any claims of discrimination on the basis of sex cognizable under Title IX. The panel rejected plaintiffs' three theories under Title IX: selective enforcement, erroneous outcome, and deliberate indifference. The panel determined that plaintiffs failed to sufficiently allege that the decision to discipline them was grounded in gender bias or that the administration or outcome of the disciplinary proceedings were flawed due to the student athletes' sex. The panel further determined

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that plaintiffs waived their "deliberate indifference" theory of Title IX liability.

The panel held that the student athletes' due process claims failed because they received constitutional due process through the University's disciplinary proceedings. The panel assumed, without deciding, that the student athletes had property and liberty interests in their education, scholarships, and reputation as alleged in the complaint. Nonetheless, the panel held that the student athletes received the hallmarks of procedural due process: notice and a meaningful opportunity to be heard.

## COUNSEL

Alan Carl Milstein (argued), Sherman Silverstein Kohl Rose & Podolsky P.A., Moorestown, New Jersey; Marianne Dugan, Eugene, Oregon; for Plaintiff-Appellant Brandon Austin.

Brian I. Michaels (argued), Eugene, Oregon, for Plaintiffs-Appellants Dominic Artis and Damyean Dotson.

Kevin Scott Reed (argued), Office of the General Counsel, University of Oregon, Eugene, Oregon; P.K. Runkles-Pearson, Miller Nash Graham & Dunn LLP, Portland, Oregon; for Defendants-Appellees.

## OPINION

McKEOWN, Circuit Judge:

These companion cases concerning campus sexual assault raise an issue of first impression in this circuit—whether the *McDonnell Douglas*[1] evidentiary presumption applies at the pleading stage in a Title IX case. Following the Supreme Court's explanation of Title VII's pleading requirements in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), we conclude that Federal Rule of Civil Procedure 8(a), not *McDonnell Douglas*, applies at the motion to dismiss stage. On this basis, we affirm the district court's dismissal of the Third Amended Complaint because, putting aside mere conclusory allegations, the complaint fails to make any claims of discrimination on the basis of sex cognizable under Title IX. We also affirm the dismissal of the remaining due process and state law claims.

## BACKGROUND

Brandon Austin, Dominic Artis, and Damyean Dotson (collectively, the "student athletes") were basketball players on scholarship at the University of Oregon (the "University") in 2014. In March 2014, a female student accused the men of forcing her to engage in nonconsensual sex at an off-campus apartment. She reported the alleged sexual assault to the Eugene police department within a few days. When details of the alleged assault became public, in part because the local news published the police report in full, the campus erupted in protest. Although the Lane County District Attorney ultimately decided not to prosecute

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

the student athletes, the University proceeded with a formal disciplinary process.

Central to this case is the University of Oregon Student Conduct Code in effect at the time, which defined "sexual misconduct" to include penetration without explicit consent. (Other types of sexual activity contemplated by the Code are not at issue here.)  The Code also defined "explicit consent" as "voluntary, non-coerced and clear communication indicating a willingness to engage in a particular act," including "an affirmative verbal response or voluntary acts unmistakable in their meaning." *See* Or. Admin. R. 571-021-0105(30), 571-021-0120(3)(h) (2006) ("Student Conduct Code"), *available at* http://policies.uoregon.edu/vol-3-administration-student-affairs/ch-1-conduct/student-conduct-code.

The student athletes had the option to choose between two types of disciplinary hearings: a panel hearing or an administrative conference.  They opted for the simpler, more streamlined administrative conference.  According to the complaint and the University's Special Choice of Resolution Form, the administrative conference procedure included notice of the character of the accusations against each student athlete, a summary description of the types of processes available, and the range of possible penalties; access to the case file; the opportunity to review and respond to the investigative report including witness interviews; representation by an advisor, including counsel; and a neutral administrator as a hearing officer. *See* Or. Admin. R. 571-021-0205(1) (2006).  The student athletes claim that the hearings deprived them of constitutionally required procedural safeguards.

The University's Director of Student Conduct & Community Standards oversaw the hearing and found the

student athletes responsible for sexual misconduct because they had violated the Student Conduct Code by "engaging in penetration without explicit consent." The University suspended the student athletes for at least four years and until the female student is no longer enrolled at the University (but not longer than ten years). It also declined to renew their scholarships.

The student athletes brought this action against the University and various administrators, alleging several causes of action, including Title IX claims based on sex discrimination and due process violations. The district court dismissed the Third Amended Complaint with prejudice.

## DISCUSSION

### I. Rule 8(a) Pleading Standard in *Swierkiewicz*

Despite the parties' extensive briefing, we need look no further than the Supreme Court's guidance in *Swierkiewicz* to divine that Rule 8(a)[2] provides the appropriate standard for reviewing a Rule 12(b)(6) motion to dismiss under Title IX. *Swierkiewicz*, 534 U.S. at 510–11. The Sixth Circuit is in accord. *See Doe v. Baum*, 903 F.3d 575, 580–81 (6th Cir. 2018) (applying Rule 8(a) to a Title IX claim without discussing *McDonnell Douglas*).

In *Swierkiewicz*, the Supreme Court reiterated that "[t]he prima facie case under *McDonnell Douglas* . . . is an

---

[2] Rule 8(a) provides: "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ."

evidentiary standard, not a pleading requirement."**[3]**  534 U.S. at 510.  Under the familiar *McDonnell Douglas* evidentiary presumption, once a plaintiff pleads a prima facie case of discrimination, the burden of proof shifts to the non-moving party to show non-discriminatory intent.  *See McDonnell Douglas*, 411 U.S. at 802.  The framework "is a tool to assist plaintiffs at the summary judgment stage so that they may reach trial."  *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003).

*McDonnell Douglas* thus sets out "the order and allocation of proof" in a Title VII case.  411 U.S. at 800.  But, the

> Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.  For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings."

*Swierkiewicz*, 534 U.S. at 511 (alteration in original) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).  The Court went on to explain that, "[c]onsequently,  the ordinary rules for assessing the

---

**[3]** *Swierkewicz* was a Title VII case.  We apply the principles of Title VII cases to Title IX claims.  *See*, *e.g.*, *Franklin v. Gwinnett Cty. Pub. Sch.,* 503 U.S. 60, 75 (1992) (relying on a Title VII case to determine whether sexual harassment qualified as discrimination under Title IX); *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012) (applying the framework from Title VII cases to a Title IX retaliation claim).

sufficiency of a complaint apply[:] . . . . The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Id.* at 511, 514.

Without citing *Swierkiewicz*, the Second Circuit reached the opposite result in *Doe v. Columbia University*, 831 F.3d 46, 55–56 (2d Cir. 2016), and applied the *McDonnell Douglas* presumption at the motion to dismiss stage in a Title IX case. The court did reference a previous Title VII case in which it invoked the *McDonnell Douglas* presumption at the pleading stage. *Id.* at 54–55 (analyzing *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)). In *Littlejohn*, the Second Circuit recognized that *Swierkiewicz* eliminated the possibility of a *heightened* pleading standard for Title VII claims, but then construed *Swierkiewicz* as introducing a *lower* pleading standard. *See Littlejohn*, 795 F.3d at 309 ("Reading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent."). This led the court to reason that the *McDonnell Douglas* presumption informs the application of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in Title VII cases. *See Littlejohn*, 795 F.3d at 310 ("We conclude that *Iqbal*'s requirement applies to Title VII complaints of employment discrimination, but does not affect the benefit to plaintiffs pronounced in the *McDonnell Douglas* quartet."). We read the Second Circuit's application of the *McDonnell Douglas* presumption at the pleading stage as contrary to Supreme Court precedent, and we decline to embrace that approach.[4]

---

[4] We emphasize that Rule 8(a)'s liberal pleading standard is lenient enough to allow meritorious discrimination claims to proceed while preserving the gatekeeping function of pleading standards. This opinion

## II. Application of Rule 8(a) to the Student Athletes' Title IX Claims

It is well established that, under Rule 8(a), a plaintiff need only provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All factual allegations are accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. *See Iqbal*, 556 U.S. at 678 (noting that this standard is not a "probability requirement," but "asks for more than a sheer possibility that a defendant has acted unlawfully"). The standard provides for liberal treatment of a plaintiff's complaint at the pleading stage.

Despite three efforts to meet this pleading standard and state a Title IX claim,[5] the student athletes failed to do so. What is missing for each theory of liability are sufficient, nonconclusory allegations plausibly linking the disciplinary action to discrimination on the basis of sex. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) (holding that a plaintiff can allege multiple theories for his or her claim, but under any theory "wholly conclusory allegations [will not] suffice for purposes of Rule 12(b)(6)").

---

should in no way be interpreted as requiring a heightened pleading standard for Title IX claims.

[5] Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX applies to "all of the operations of . . . a college, university, or other postsecondary institution, or a public system of higher education." *Id.* § 1687.

The student athletes advance three theories under Title IX: selective enforcement, erroneous outcome, and deliberate indifference.  The essence of the selective enforcement theory is that the decision to discipline the student athletes was "grounded" in gender bias.  But the student athletes fail to allege how this is so.  The complaint recites such facts as the content of the University president's speech and the campus protests, but does not make any plausible link connecting these events and the University's disciplinary actions to the fact that the student athletes are male. *See Yusuf*, 35 F.3d at 715 ("[A selective enforcement] claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.").

Just saying so is not enough.  A recitation of facts without plausible connection to gender is not cured by labels and conclusory statements about sex discrimination. *See Twombly*, 550 U.S. at 556 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . " (internal quotations mark and alterations omitted)). *Compare Swierkiewicz*, 534 U.S. at 514 (detailing specific allegations in a discrimination case that linked a wrongful termination to age and national origin).

The student athletes also allege that, because the University disciplines male students for sexual misconduct but never female students, it is biased against men.  But this allegedly disparate impact, even assuming it is true, claims too much.  Significantly, the complaint does not claim that any female University students have been accused of comparable misconduct, and thus fails to allege that

similarly situated students—those accused of sexual misconduct—are disciplined unequally.[6] The district court also recognized the lack of parallelism and reasoned "[s]imply because enforcement is asymmetrical does not mean that it is selectively so." We agree. Without nonconclusory allegations that the male students were treated any differently than similarly situated female students based on sex, the selective enforcement theory fails.

The erroneous outcome theory also fails because the student athletes do not articulate any basis to discern that the administration or outcomes of the disciplinary proceedings were flawed due to the student athletes' sex. *See Yusuf*, 35 F.3d at 715. Even if the outcome of the administrative conference procedure was erroneous, the complaint is missing any factual allegations that show that sex discrimination was the source of any error.

Lastly, the student athletes advance a "deliberate indifference" theory of Title IX liability, but only make passing reference to it in one line of a footnote. Without meaningful briefing on this issue, we consider the argument waived. *See United States v. Kama,* 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief.").

The district court previously dismissed the student athletes' Title IX claims with leave to amend and yet, after two efforts, they still could not allege additional facts to

---

[6] We agree with the district court that the only incident cited in the complaint involving an "accused" female student—threatening another student with a knife—did not constitute sexual misconduct.

sufficiently plead these claims. We affirm the district court's dismissal of the Title IX claims with prejudice.

## III.    Claims for Violations of Due Process

The student athletes' due process claims fail because they received constitutional due process through the University's disciplinary proceedings.[7] *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under *Mathews*, we balance three factors: (1) the private interests subjected to official action; (2) the risk of an erroneous outcome and the "probable value, if any, of additional or substitute procedural safeguards"; and (3) the governmental interest involved, including fiscal and administrative concerns. *See id.* at 334–35. Essentially, "some form of hearing is required before an individual is finally deprived of a property interest." *Id.* at 333.

We assume, without deciding, that the student athletes have property and liberty interests in their education, scholarships, and reputation as alleged in the complaint. Nonetheless, they received "the hallmarks of procedural due process": notice and a meaningful opportunity to be heard. *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012) (quoting *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir. 1989) (order)). Notice is not an issue here and nothing in the allegations supports a claim that the student athletes did not receive a meaningful hearing with the right to be heard. Importantly, they were represented by counsel and given a choice of a Special Administrative Conference or a Panel Hearing with a panel of students, faculty, and staff and the option to appeal. They signed a Special Choice of

---

[7] Because there were no due process violations, we need not reach the issue of qualified immunity.

Resolution Form and chose the Special Administrative Conference.  In doing so, they removed the possibility of expulsion and negotiated away a potential "negative notation" on their academic record, replacing it with a "notation of finding of Code violation – unspecified." Because the student athletes were represented by counsel and negotiated the scope of sanctions, they can hardly be heard to complain about the administrative hearing's procedural safeguards.  Under *Mathews*, a hearing need not include every procedure possible, nor is one entitled to a hearing of one's own design.   424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))).  On these facts, the student athletes were not denied due process.

Finally, we credit the University's focus on encouraging students' personal integrity and cooperative (rather than coercive) interpersonal behavior, interest in providing an environment free of sexual misconduct, and setting up a disciplinary system that provides students an opportunity to be heard.  We affirm the district court's dismissal of the due process claims.  We also affirm the dismissal of the state law claims for the reasons stated in the district court's orders dismissing the Third and Second Amended Complaints.

**AFFIRMED.**