Filed 11/8/21  John T.D. v. River Delta Joint Unified School District CA3

### NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JOHN T. D., | C092655 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201700213972CUPOGDS) |
| v. | |
| RIVER DELTA JOINT UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

John T. D. appeals from a judgment of dismissal entered after the trial court sustained respondents' demurrer to his claims for sexual harassment and retaliation under title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.) (Title IX). With respect to sexual harassment, the trial court concluded John did not adequately allege harassment based on gender or sex, or that the moving defendants were actually alerted to such harassment.  With respect to retaliation, the court concluded deliberate indifference was not a permissible theory of liability under Title IX.  We conclude deliberate indifference may be used to establish a cause of action for retaliation under

1

Title IX, and John's allegations were sufficient to survive demurrer. We will reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The fourth amended complaint was brought by John and his co-plaintiff N.B. against River Delta Joint Unified School District (the District), its superintendent, plaintiffs' former principal, and plaintiffs' former coach. Plaintiffs' first and second causes of action alleged separate claims for sex-based harassment and retaliation against the District under Title IX. The third and fourth causes of action were asserted only by co-plaintiff N.B. against all defendants and alleged state law claims for negligent supervision and hiring that are not at issue in this appeal. For purposes of this appeal, we need only summarize the relevant facts pertaining to John.

John was a member of the football team. John alleges his coach would talk about sex with his wife and ask " 'how far' " team members had gotten with their girlfriends, questioning them about specifics. If team members admitted they were not having sex with their girlfriends, the coach asked, " 'why not' " and " 'what are you waiting for?' " The coach spoke about the importance of penis size. At weekly team dinners, the coach talked about having sex with various players' mothers. John did not participate in the discussions about sex or laugh at the comments, and he alleges he was singled out for ridicule for admitting to being a virgin.

John also alleges football players became members of the "Brotherhood." One rite of passage was that younger team members had to touch the senior players' testicles in order to progress on the team. The coach was aware of this practice. Once, when the team was in the locker room unsupervised, teammates demanded John touch another teammate's exposed testicles, and John ran from the room.

John alleges that due to his refusal to participate in sexualized talk and the Brotherhood, "he was further characterized as 'different', 'not macho' and perceived as possibly gay."

2

John played center. He alleges the quarterback started deliberately grabbing and fondling John's testicles instead of merely touching his leg to indicate he was ready to receive the snap. John complained repeatedly, but the coach allowed this to continue. Further, the coach began "the Oklahoma Drill" on John to "make a man" out of him. The drill consisted of two players running into each other between barriers. The complaint alleges the use of this contact drill during the off season was prohibited by law.

Teammates began using the term "FUCKJT[Year]" in the group chat; this term was also yelled during classes.

The complaint alleges John's mother met with the principal for the first time in mid-September and complained that her son was being bullied and sexually harassed in violation of the law and the student handbook. Specifically, she reported John had been singled out by the coach for his virginity and refusal to actively participate in the Brotherhood and the team's discussions of sexual exploits. John's mother also reported that team members were texting "FUCKJT[Year]" in their group chat, and the quarterback had been fondling her son's testicles during practice. John told the principal "he was not permitted to stand up and complain." John's mother reported that her son felt degraded, humiliated, anxious, and fearful, and this was causing a negative impact on his participation in football and his academic performance.

The complaint alleges the principal's response was to speak with the coach. At the next practice, while in a group huddle, the coach stared at John while explaining that " 'some people' are 'tattle-tales' " and " 'sometimes people don't know how to take a joke and you can't say things anymore in group chat that could be perceived as wrong, so knock it off.' " John alleges the team understood he was the "tattle-tale" and the coach was directing the Brotherhood to retaliate against him. At the same practice, the coach began using a modified Oklahoma drill that had multiple players almost twice John's size line up and run into him repeatedly. This occurred "practically daily" and caused severe bruising.

3

John's mother met again with the principal in September and complained about the modified drill and continued harassment. The complaint alleges the principal took no further action other than to explain to John that he needed to let things roll off his back and have " 'thicker skin,' " and inviting him to come to the outer room of her office when he became overwhelmed.

John alleges he reported to the principal's office, upset, on almost a daily basis. The principal saw him there, but she never asked why he had come. He missed school—once for a week and a half straight—and stopped going to football practice. Before the end of the school year, he withdrew from the school.

The defendants except the coach demurred to the first two causes of action in the fourth amended complaint. These defendants, who are the respondents in this appeal, argued the plaintiffs failed to state facts sufficient to constitute either cause of action. They also argued the plaintiffs were improperly joined in the action.

The trial court sustained the demurrer without leave to amend.

Judgment was entered dismissing John's action, and he filed a timely appeal.[1]

## II. DISCUSSION

### A. *Standard of Review*

"Because this case comes before us on appeal from a judgment sustaining a demurrer, we assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn from those facts." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 883, superseded by statute on other grounds as stated in *Taswell v. Regents of University of California* (2018) 23 Cal.App.5th 343, 358-359.)

---

[1] N.B. sought review in this court by filing a petition for writ of mandate, prohibition, or other appropriate relief. In an earlier opinion, we issued a writ of mandate directing the superior court to vacate its order sustaining the demurrer to the fourth amended complaint without leave to amend, and to issue a new order overruling the demurrer as to N.B.'s claims. (*N.B. v. Superior Court* (July 19, 2021, C092585) [nonpub. opn.].)

We do not, "however, assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872.)

As John suggests, "[s]trict local rules of pleading cannot be used to impose unnecessary burdens upon rights of recovery authorized by federal laws." (*Brown v. Western R. of Ala.* (1949) 338 U.S. 294, 298.) Previously, we have held "that the state courts of California should apply federal law to determine whether a complaint pleads a cause of action under [42 U.S.C.] section 1983 sufficient to survive a general demurrer." (*Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 563.) We do not think there is any difference between the applicable state and federal standards that would alter the outcome of this appeal.

Under the Federal Rules of Civil Procedure (28 U.S.C.), "a plaintiff need only provide 'enough facts to state a claim to relief that is plausible on its face.' [Citation.] All factual allegations are accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. [Citation.] The standard provides for liberal treatment of a plaintiff's complaint at the pleading stage." (*Austin v. University of Oregon* (9th Cir. 2019) 925 F.3d 1133, 1137.) On appeal, a decision to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure (28 U.S.C.), like the sustaining of a demurrer under California law, is reviewed de novo. (*Manzarek v. St. Paul Fire & Marine Ins. Co.* (9th Cir. 2008) 519 F.3d 1025, 1030; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

B.      *First Cause of Action for Sex-Based Harassment*

Title IX mandates, with certain exceptions not relevant here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." (20 U.S.C. § 1681(a).) "Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination." (*Jackson v. Birmingham Board of Education* (2005) 544 U.S. 167, 173.)

In *Gebser v. Lago Vista Independent School District* (1998) 524 U.S. 274 (*Gebser*), the United States Supreme Court explained that in cases that do not involve an official policy of a recipient entity, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." (*Id*. at p. 290; see also *id*. at p. 277 ["damages may not be recovered . . . unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct"].) That case involved alleged misconduct by a teacher. (*Id*. at p. 277.)

One year later, in *Davis v. Monroe County Board of Education* (1999) 526 U.S. 629 (*Davis*), the court held a Title IX funding recipient can be liable for student-on-student harassment as well, "but only where the funding recipient acts with deliberate indifference to known acts of harassment in its program or activities," and "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." (*Id*. at p. 633; see also *id.* at p. 650 ["funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school"].)

The four requirements for the imposition of school district liability under Title IX for student-on-student harassment are: (1) the school district " 'exercises substantial control over both the harasser and the context in which the known harassment occurs,' " (2) "the plaintiff suffers 'sexual harassment . . . that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school,' " (3) the school district must have " 'actual knowledge' of the harassment," and (4) " 'its deliberate indifference subjects its students to harassment.' " (*Reese v. Jefferson School Dist. No. 14J* (9th Cir. 2000) 208 F.3d 736, 739.) Here, John alleges harassment by a coach and students. This showing is sufficient to state a claim based on harassment by both or either. (*Karasek v. Regents of the University of California* (9th Cir. 2020) 956 F.3d 1093, 1105; *Jennings v. University of North Carolina* (4th Cir. 2007) 482 F.3d 686, 695, 700.) However, "[t]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity. Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment." (*Davis, supra*, 526 U.S. at p. 653.)

   *1.    Substantial Control*

The first requirement is that the District exercised substantial control over the harassers and the context in which the harassment occurs. (*Davis*, 526 U.S. at p. 646.) "This requirement can be met by proof that the misconduct occurred 'during school hours and on school grounds' or when the 'harasser is under the school's disciplinary authority.' " (*Roe ex rel. Callahan v. Gustine Unified School Dist.* (E.D.Cal. 2009) 678 F.Supp.2d 1008, 1025, quoting *Davis*, 526 U.S. at p. 646.) Here, the alleged misconduct occurred mainly on school grounds and always during school hours, football practice, or another team event. This is sufficient to satisfy the requirement of substantial control on

demurrer. (See *ibid.* [evidence of high school's sponsorship of off-campus football camp supervised by school's coaches was sufficient on summary judgment].)

  2.  *Harassment*

  The requirement that a school district can be held liable in damages only where the plaintiff suffers "sexual harassment . . . that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school" is a multi-part inquiry. (*Davis, supra*, 526 U.S. at p. 650.) The trial court concluded that the complaint did not allege discrimination or harassment based on gender or sex because it alleged the coach "created a sexually charged atmosphere that the students were expected to join, not as to each other but as to the opposite sex in general." Further, while the principal's "alleged response may seem indifferent, the Court's review of the [complaint] suggests that, based on the facts pled, there are a mere handful of identifiable incidents cited to support John's claim."

  *a.  On the Basis of Sex*

  We begin with whether the alleged misconduct was "on the basis of sex." (20 U.S.C. § 1681(a).) A plaintiff can demonstrate sex discrimination for purposes of Title IX "by showing that he or she was mistreated for failing to conform to traditional sex stereotypes." (*Chisholm v. St. Marys City School District Board of Education* (6th Cir. 2020) 947 F.3d 342, 351.) The complaint alleges that "[r]epeatedly, during the huddles, [the coach] questioned and joked openly about [John]'s virgin status and inferred to all present that because [John] was still a virgin he was unmanly, not macho, something contemptible, and so worthy of mistreatment." The complaint also alleges, as a result of John's refusal to participate in the Brotherhood and sexualized talk, "he was further characterized as 'different, 'not macho' and perceived as possibly gay." Further, after his "apparent failure to demonstrate that he was a whole-hearted member of the Brotherhood, by his desperate efforts to prove to the Brotherhood that he was a 'real man' who could

8

hit hard in football, [the coach] began the Oklahoma Drill on [John], telling [John] it would '<u>make a man</u>' out of him."  In isolation, we might conclude like the court of appeal in *Chisholm* that the coach's comment "targeted a fundamental requirement for football players—toughness" and "[f]or better or worse, [the coach]'s comments were about playing football, not gender roles."  (*Chisholm*, *supra*, 947 F.3d at p. 352; see *id.* at p. 349 [addressing "whether a high school football coach's use of the term 'pussy'—in the context of football-related activities—is enough to implicate Title IX protections"].)  But, John alleges the drill began after he failed to participate in conversations about sex, admitted his virginity, and refused to participate in a hazing ritual that involved touching players' testicles—none of which is a fundamental requirement for playing football—and that he was characterized as " 'different' " and " 'not macho' " for his nonconformity.  On demurrer, he is entitled to all reasonable inferences in his favor.  (*Miklosy v. Regents of University of California*, *supra*, 44 Cal.4th at p. 883.)  The complaint is sufficient to allege the misconduct directed at John was based on his failure to conform to a traditional sex stereotype.

### b. *Severe, Pervasive, and Objectively Offensive*

"Whether gender-oriented conduct rises to the level of actionable 'harassment' . . . 'depends on a constellation of surrounding circumstances, expectations, and relationships,' [citation], including, but not limited to, the ages of the harasser and the victim and the number of individuals involved."  (*Davis, supra*, 526 U.S. at p. 651.)  Additionally, "[c]ourts . . . must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults.  [Citation.]  Indeed, at least early on, students are still learning how to interact appropriately with their peers.  It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it.  Damages are not available for simple acts of teasing and name-calling among school children, however, even where

9

these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." (*Id*. at pp. 651-652.) Federal courts "have observed that 'the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact,' [citation]; and it is even less suited for dismissal on the pleadings." (*Doe v. School District No. 1, Denver, Colorado* (10th Cir. 2020) 970 F.3d 1300, 1312.)

In this instance, John alleges more than simple teasing and name-calling. In addition to the "FUCKJT[Year]" campaign and teasing about his virginity, he alleges he complained to the coach that the quarterback was grabbing and fondling his testicles, but the coach allowed this to continue. After he failed to participate in the Brotherhood, the coach used the Oklahoma drill on John. (See *Jennings v. University of North Carolina*, *supra*, 482 F.3d at p. 697 ["Any age disparity between the harasser and his victim is also relevant to gauging whether there was a hostile or abusive sexual environment"].) After John and his mother complained to the principal, the coach had much larger players run into John multiple times, almost daily, to the point of causing severe bruising on John's shoulder, arm, wrist, and the left side of his body. (See *Doe v. School District No. 1, Denver, Colorado*, *supra*, 970 F.3d at pp. 1310-1311 [considering potentially retaliatory actions as part of sexual harassment claim].) John has adequately alleged facts to support a claim for sex-based harassment that was severe, pervasive, and objectively offensive.

   *c. Denial or Exclusion from Educational Opportunities or Benefits*

This discrimination must "effectively bar[] the victim's access to an educational opportunity or benefit." (*Davis, supra*, 526 U.S. at p. 633.) Physical exclusion is unnecessary. (*Id*. at p. 651.) "Rather, a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines

10

and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." (*Ibid.*)

This case alleges harassment that caused John to stop playing football, miss a significant amount of school, and ultimately withdraw from the school. (See *Jennings v. University of North Carolina*, *supra,* 482 F.3d at p. 700 [jury could conclude harassment had negative impact on ability to participate in soccer program]; *Doe v. School District No. 1, Denver, Colorado*, *supra*, 970 F.3d at pp. 1312-1313 [complaint alleged harassment became so intolerable plaintiff could not attend class].) John has adequately alleged harassment that caused the denial of educational opportunities or benefits.

   *3.   Actual Knowledge*

A school district is liable in damages only where it has "actual knowledge" of the harassment. (*Davis, supra*, 526 U.S. at p. 650.) In *Gebser*, the U.S. Supreme Court explained the actual knowledge requirement and announced that damages may not be recovered unless an official "who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond." (*Gebser, supra*, 524 U.S. at p. 290; see also *Davis*, *supra*, at p. 633 [concluding funding recipient may be liable where it "acts with deliberate indifference to known acts of harassment in its programs or activities"].) Notice to a high school principal is sufficient for these purposes. (*Doe v. School Bd. of Broward County, Fla*. (11th Cir. 2010) 604 F.3d 1248, 1255.) The trial court stated, "[i]t is unclear how often the student comments were directed to John (daily v. occasionally), and whether these moving Defendants were actually alerted to intense bullying that could have constituted actual sexual harassment for purposes of Title IX liability, as opposed to simple harassment on some other basis." The ruling makes no reference to the allegations that the coach permitted the quarterback to fondle John's testicles during practice and the coach was using a contact drill to punish John, all of which the complaint alleges was relayed to the principal. Respondents'

11

suggestion that John did not allege he or his family reported any of the incidents to any school official is not a fair reading of the complaint. The complaint also alleges John's mother told the principal: (1) the coach had violated sexual harassment laws, (2) John was being singled out by the coach for his refusal to actively participate in the Brotherhood and engage in sexual talk, and (3) John "was being harassed about allegedly kissing his sister because he was a virgin." John pled actual knowledge of sexual harassment sufficient to survive demurrer.

### 4. *Deliberate Indifference*

"If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subjects' its students to harassment. That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." (*Davis, supra,* 526 U.S. at pp. 644-645.) The U.S. Supreme Court explained that we "should refrain from second-guessing the disciplinary decisions made by school administrators" and deliberate indifference occurs "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." (*Id*. at p. 648.) "In an appropriate case, there is no reason why courts, on a motion to dismiss . . . , could not identify a response as not 'clearly unreasonable' as a matter of law." (*Id*. at p. 649.) This does not appear to be such a case. According to the allegations in the complaint, the principal was aware of various allegations including that a teammate had been fondling John's testicles during practice, but the result was only that the coach talked to the team about their group texts. Then, after John's mother complained of continued harassment and the use of the retaliatory contact drill, the principal took no further action other than to essentially tell John to ignore everything, and to permit him to take refuge in her office. The complaint alleges John reported to the principal, upset, on an almost daily basis and received no additional response. We cannot conclude the response was not clearly unreasonable as a matter of law. (*Ibid.*) Title IX "does not mean that recipients can avoid liability only by

12

purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." (*Id.* at p. 648.) Nonetheless, "it is not enough to try to help a student cope with the misbehavior of other students. [Citation.] Deliberate indifference may be shown by a failure to act to halt the misbehavior." (*Doe v. School District No. 1, Denver, Colorado*, *supra*, 970 F.3d at pp. 1313-1314.)

The trial court erred in sustaining the demurrer to John's first cause of action.

## C. *Second Cause of Action for Retaliation*

John's second cause of action for violation of Title IX was based on alleged retaliation for reporting the harassment.

"An allegation that the plaintiff was harassed for reporting misconduct can . . . suffice to state a claim for discrimination on the basis of sex if the misconduct reported is itself sex discrimination." (*Doe v. School District No. 1, Denver, Colorado*, *supra*, 970 F.3d at p. 1310; see *Jackson v. Birmingham Board of Education*, *supra*, 544 U.S. at p. 173 ["Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action"].)

The trial court held that a deliberate indifference standard is insufficient to support a Title IX retaliation claim. This is incorrect. (See, e.g., *Sewell v. Monroe City School Board* (5th Cir. 2020) 974 F.3d 577, 586 [concluding retaliation claim not based on official policy requires deliberate indifference]; *Feminist Majority Foundation v. Hurley* (4th Cir. 2018) 911 F.3d 674, 695 ["an educational institution can be liable for acting with deliberate indifference toward known instances of student-on-student retaliatory harassment"]; *Doe v. University of Tennessee* (M.D.Tenn. 2016) 186 F.Supp.3d 788, 811 ["To the extent that Jane Doe V is able to show that UT had notice that she was suffering a hostile environment based on the threats the football players made to *her* and did not adequately respond, this is not inaction, but rather the condoning of retaliatory conduct that could form the basis for a retaliation claim against UT"].) The trial court's reasoning

was based on the following statements in *Jackson v. Birmingham Board of Education*, *supra*, 544 U.S. 167: "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action. Retaliation is, by definition, an intentional act," and "retaliation presents an even easier case than deliberate indifference. It is easily attributable to the funding recipient, and it is always—by definition—intentional." (*Id*. at pp. 173-174, 183.) The U.S. Supreme Court made these statements in explaining that "deliberate indifference" in its prior authorities constituted intentional discrimination on the basis of sex sufficient to impose liability under Title IX, and so did retaliation. (*Id*. at pp. 182-183.) In *Jackson*, a teacher alleged a school board had retaliated against him. (*Id*. at p. 171.) There was no need to analyze whether a deliberate indifference standard could be utilized in this scenario. These statements in *Jackson* have not been understood to preclude the applicability of a deliberate indifference analysis in a retaliation claim. (E.g., *Doe v. School District No. 1, Denver, Colorado, supra*, 970 F.3d. at pp. 1310-1311.)

Applying the deliberate indifference standard, we conclude John adequately alleged a claim for retaliation. He alleges that after he and his mother complained to the principal, the coach called him a "tattle-tale" in front of the team and had much larger players run into him multiple times, almost daily, to the point of causing severe bruising on his shoulder, arm, wrist, and the left side of his body. John alleges his mother told the principal about the retaliatory drill "and other continuing harassment and retaliation" by the team and the coach, and the principal took no action. At this stage, John has adequately alleged the principal was aware he was being retaliated against for reporting sex discrimination and was ineffective enough at halting this misbehavior or shielding John from it that his claims can survive the pleading stage. Again, we cannot conclude the response was not clearly unreasonable as a matter of law. (*Davis*, *supra*, 526 U.S. at p. 649.) As with his first cause of action, the allegations that John stopped playing

14

football, missed class, and ultimately withdrew from school were sufficient to allege the retaliation effectively barred his access to educational opportunities. Thus, the trial court erred in sustaining the demurrer to John's second cause of action.

## III. DISPOSITION

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with the views stated herein. Plaintiff John T. D. shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

RENNER, J.

We concur:

/S/

HULL, Acting P. J.

/S/

MURRAY, J.