**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID OTTO SCHWAKE,
　　　　　*Plaintiff-Appellant*,

　　　　　v.

ARIZONA BOARD OF REGENTS;
MICHAEL M. CROW; KEVIN COOK;
NOREAN SABLAN; RON HICKS;
GREGORY CASTLE; THOMAS SEAGER,
　　　　　*Defendants-Appellees.*

No. 18-15725

D.C. No.
2:15-cv-00696-
SPL

OPINION

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted March 5, 2020
San Francisco, California

Filed July 29, 2020

Before: KIM MCLANE WARDLAW, MILAN D.
SMITH, JR., and PATRICK J. BUMATAY,
Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Title IX

The panel reversed in part and vacated in part the district court's order of dismissal and remanded in an action alleging that Arizona State University violated Title IX, 20 U.S.C. § 1681(a), by discriminating against plaintiff on the basis of sex during the course of a sexual misconduct disciplinary case against him.

The panel held that plaintiff stated a Title IX claim against the University because he plausibly alleged gender bias. The panel held that plaintiff first established a background indicia of sex discrimination relevant to his Title IX claim by alleging that: (1) the University faced contemporaneous pressure as a result of a Department of Education investigation, which affected how it handled sexual misconduct complaints; and (2) the University had a pattern of gender-based decisionmaking.

The panel next considered the allegations concerning the disciplinary case against plaintiff. The panel held that public statements made by an associate professor at the University reflected an atmosphere of bias against plaintiff during the course of the University's disciplinary case. The panel further noted that plaintiff alleged that the University (1) denied plaintiff an opportunity to appeal the punishment and the underlying findings; (2) refused plaintiff permission

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to file a harassment complaint against the complainant; and (3) conducted a one-sided investigation.

Considering the combination of plaintiff's allegations of background indicia of sex discrimination along with the allegations concerning his particular disciplinary case, the panel concluded that sex discrimination was a plausible explanation for the University's handling of the sexual misconduct disciplinary case against plaintiff. This was sufficient for plaintiff's Title IX claim to proceed beyond the motion to dismiss stage.

## COUNSEL

Aaron K. Block (argued), The Block Firm LLC, Atlanta, Georgia; Joseph P. Palmisano, Acaia Law Group, Scottsdale, Arizona; for Plaintiff-Appellant.

Michael K. Goodwin (argued) and Rusty D. Crandell, Assistant Attorneys General; Dominic E. Draye, Solicitor General; Mark Brnovich, Attorney General; Office of the Attorney General, Phoenix, Arizona; for Defendants-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

This case concerns an Arizona State University (the University[1]) disciplinary case against David Otto Schwake for alleged violations of the University's Student Code of Conduct (the Student Code), triggered by another student's complaint that Schwake had engaged in unwanted contact and sexual misconduct with her. Schwake brought this suit because of the University's handling of the disciplinary case against him. In relevant part, he claimed that the University violated Title IX, 20 U.S.C. § 1681(a), as a federally funded educational institution that discriminated against him on the basis of sex during the course of the disciplinary case. The district court dismissed this claim because it deemed some of Schwake's allegations to be conclusory. The court further reasoned that a university's aggressive response to a sexual misconduct complaint is not evidence of gender bias.

We must decide whether Schwake plausibly alleged that the University discriminated against him on the basis of sex.[2] His complaint is similar to Title IX claims brought by a number of men alleging sex discrimination by federally funded universities and colleges in sexual misconduct disciplinary cases against them. Although our court has affirmed the dismissal of some such claims, *Austin v. Univ. of Or.*, 925 F.3d 1133 (9th Cir. 2019), we have not provided guidance on what allegations suffice to state a Title IX claim.

---

[1] Unless otherwise indicated, we use the term "the University" to refer to all Defendants who Schwake sued in their official capacities.

[2] Schwake also claimed violations of his constitutional due process rights pursuant to 42 U.S.C. § 1983. We affirm the dismissal of those claims in a concurrently filed memorandum disposition.

Providing that guidance here, we conclude that Schwake plausibly alleged that the University discriminated against him on the basis of sex. We, therefore, reverse the district court's dismissal of the Title IX claim.

# BACKGROUND

## I. Factual Background

In the summer and fall of 2014, Schwake was a University graduate student pursuing a Ph.D. in microbiology. For over three years, he worked in a campus lab as a student researcher alongside other Ph.D. students, including the student who made the sexual misconduct complaint against him (the complainant). Schwake and the complainant "oscillated between being professional coworkers and dozens of romantic encounters" between February 2013 and July 2014.

On August 14, 2014, Schwake received a letter from Norean Sablan, a senior coordinator with the University's Office of Student Rights and Responsibility. The letter notified him of a complaint against him concerning "multiple instances of inappropriate behaviors and unwanted verbal and physical contact" with the complainant.[3] The letter informed Schwake of three pending disciplinary charges against him for Student Code violations, including unwanted or repeated significant behavior and sexual

---

[3] The letter directed Schwake to refrain from all contact with the complainant and indicated that Schwake would face additional disciplinary action if he failed to do so. Schwake's lab supervisor set up a lab sharing schedule to prevent Schwake and the complainant from being in the lab at the same time. Schwake alleges that although he never violated the schedule, the complainant violated it over twenty times between August 14 and October 15, 2014.

misconduct.    During a meeting the next day, Sablan
suggested that Schwake prepare evidence and witnesses
while the University investigated.

Schwake and Sablan met a second time on August 22,
2014 to discuss the sexual misconduct complaint.  A few
days later, Schwake provided, at Sablan's request, a four-
page written account of the "most serious allegations" that
"he touched [the complainant's] breasts without her consent
while she was asleep sometime between March 26 and
March 27, 2014."    He included text messages, "which
confirmed the sexual activity of the night of the accusation
was consensual and that the two had a friendly and romantic
relationship for several months afterwards."  Schwake stated
that several students and staff members could corroborate his
"on-again off again" relationship with the complainant and
their consensual intimate contacts.  He suggested that the
complainant "may have deliberately provided false
information or left out key details[.]"

On September 5, 2014, Schwake received a letter from
Sablan, which explained that the University had found him
responsible for the disciplinary charges.  He was suspended
until Fall 2017 "effective immediately," unless he requested
a hearing to appeal the decision.  University Policy § 5-
403(D), the University's student disciplinary procedure
policy, would apply to that hearing.  He could have legal
representation, cross-examine witnesses against him, and
present evidence and witnesses in his favor.

Shortly thereafter, Dr. Thomas Seager, an associate
professor, "loudly discussed" Schwake's disciplinary case
with a group in his office with the door open.  Dr. Seager
"went    into    great    detail"    about    the    complainant's
"accusations including privileged information and the
disciplinary process and told them that [the University] had

convicted [Schwake] of sexual assault and suspended him." Dr. Seager told the group that Schwake was not allowed in the building, and that any one of them should immediately call the police if they saw Schwake in the building. Despite another professor's complaint about his discussing Schwake's disciplinary case, Dr. Seager continued to discuss the case in his course throughout the semester, using it "as an example of a real-life scenario and asking students how it should be handled." In doing so, Dr. Seager identified Schwake "while disclosing confidential, graphic details" about the alleged sexual misconduct.

In early October 2014, a lawyer who Schwake had retained formally requested an appeal hearing on the University's decision. In mid-October, Schwake was removed from the lab after the complainant obtained a state court harassment injunction against him. When Schwake requested lab access, Dr. Ron Hicks, an Associate Dean of Students, told him that the University's no-contact directive remained in effect. During this time, Schwake learned that the complainant had "harassed a student lab mate," attempted to interfere with Schwake's experiments, and made false statements to the lab supervisor.

On November 3, 2014, Dr. Hicks notified Schwake that the University had received a report that he was seen in the lab, in violation of the lab access restriction and two Student Code provisions. Dr. Hicks placed Schwake on an immediate interim suspension. At a mandatory in-person meeting two days later, Schwake maintained that he did not enter the lab but had only entered and quickly left the building where the lab was located. Dr. Hicks explained that the suspension would remain in place until the evidence proved no violation. At Schwake's request, a University

security department employee e-mailed Dr. Hicks surveillance footage corroborating Schwake's account.

On November 13, 2014, Schwake received notice that the appeal hearing in his disciplinary case was set for December 12, 2014.  Eight days after receiving that notice, Dr. Hicks "forcibly withdrew" Schwake's graduation application.  Thereafter, Schwake learned that the complainant had "attempted to coerce members" of the lab to testify for her at the hearing "by falsely telling them that other labs members had agreed" to do so.

On December 3, 2014, Schwake and his lawyer met with Dr. Hicks at the University police station.  Schwake's lawyer and Dr. Hicks "had come up with a 'mutually beneficial compromise'" that would allow Schwake to graduate by changing Schwake's punishment from suspension to certain campus restrictions.  Dr. Hicks explained that, as a result, Schwake was not entitled to a hearing.[4]  When Schwake protested, Dr. Hicks stated that the decision was final; the University had no appeal process available.  When Schwake asked Dr. Hicks whether he could file a complaint against the complainant, Dr. Hicks denied telling Schwake on multiple prior occasions that he could not do so until after the disciplinary hearing because it would be seen as retaliatory.  Dr. Hicks then told Schwake that filing his own complaint could lead to further investigations and additional disciplinary sanctions, including degree revocation.

The following day, Schwake received a letter with the University's final decision, outlining the following

---

[4] University Policy § 5-403 provides a hearing only in cases of suspension, expulsion, or degree revocation.  "[T]he student will not be permitted to graduate until the hearing process has been concluded."

restrictions: a three-year restriction on accessing certain campus buildings, including the lab; a three-year ban on holding any paid or volunteer position at the University, including a post-doctoral position for Spring 2015; and a prohibition on any contact with the complainant with no end duration.  Although Schwake graduated, the disciplinary case had disrupted his dissertation, interfered with his research, caused him to lose funding and employment opportunities, and damaged his personal reputation.

## II.  Procedural History

Schwake sued in April 2015, seeking $20 million in damages as well as declaratory and injunctive relief.  He asserted § 1983 claims against Defendants Sablan and Drs. Hicks, Castle, and Seager for alleged constitutional due process violations.  He asserted a Title IX claim against the University, suing the foregoing defendants as well the Arizona Board of Regents, Michael M. Crow (the University's President), and Dr. Kevin Cook (the University's Dean of Students) in their official capacities. After the district court dismissed Schwake's initial complaint on procedural grounds, Schwake filed the operative First Amended Complaint (FAC).  The court granted the University's motion to dismiss the FAC and dismissed Schwake's claims with prejudice.  Schwake timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review de novo the grant of a motion to dismiss for failure to state a claim. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  We accept as true all well-pleaded factual allegations and construe them in the light most favorable to the non-moving party.  *Id.*  Dismissal

of a claim is appropriate if the plaintiff fails to set forth sufficient factual allegations that would, if true, entitle the plaintiff to relief.  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ANALYSIS

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."  20 U.S.C. § 1681(a).  "[S]ubject to a list of narrow exceptions not at issue here, [Title IX] broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'"  *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

Title IX is enforceable through an implied right of action in which monetary damages are available.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998).  To state a Title IX claim, a plaintiff must plead that: (1) the defendant educational institutional receives federal funding; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under any education program or activity, and (3) the latter occurred on the basis of sex.[5]  Here, Schwake alleged that the University receives federal funding.  Thus, the issues on appeal concern the second and third elements.  We first identify the relevant

---

[5] Although Title IX uses the term "sex," we have used that term interchangeably with "gender."  *See, e.g., Emeldi v. Univ. of Oregon*, 698 F.3d 715, 723 (9th Cir. 2012) ("Title IX of the Education Amendments of 1972 bars gender-based discrimination by federally funded educational institutions.").  We use the terms interchangeably to mean "sex" under Title IX for the purposes of our analysis.

inquiry for us in this context and then turn to Schwake's allegations.

## I.   The Relevant Title IX Inquiry in This Context

Title IX "encompass[es] diverse forms of intentional sex discrimination." *Jackson*, 544 U.S. at 183.  In relevant part, "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *see also Austin*, 925 F.3d at 1138–39 (considering allegations of sex discrimination during disciplinary proceedings for sexual misconduct charges).  The gravamen of Schwake's claim is that the University discriminated against him on the basis of sex during the course of the sexual misconduct disciplinary case against him.

Two of our sister circuits have fashioned doctrinal tests for sex discrimination claims in this context.  Based on its view of the claims of "gender bias [to] be expected" in this context, the Second Circuit articulated the so-called "erroneous outcome" and "selective enforcement" tests. *Yusuf*, 35 F.3d at 715.  Pursuant to the "erroneous outcome" test, the plaintiff "must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Id.*  In a "selective enforcement" claim, a plaintiff must allege that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id.*  The Sixth Circuit has expressly adopted these tests as well as the so-called "deliberate indifference" test. *See Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018).

Some of our sister circuits have applied these tests without expressly adopting them. *See Doe v. Valencia Coll.*,

903 F.3d 1220, 1236 (11th Cir. 2018) ("[W]e will assume for present purposes that a student can show a violation of Title IX by satisfying the 'erroneous outcome' test applied by the Second Circuit in *Yusuf*."); *Plummer v. Univ. of Houston*, 860 F.3d 767, 777–78 (5th Cir. 2017) ("McConnell and Plummer and the University each rely on the theories adopted in *Yusuf*, so we need not speculate on any other possible theories of Title IX liability.").

In this case, the district court referenced the erroneous outcome and selective enforcement tests as two "general categories" of Title IX claims in this context. The parties in part dispute whether Schwake pleaded an erroneous outcome theory. The underlying assumption was that Schwake must meet that test to state a Title IX claim. We disagree.

Although our court has acknowledged some of the doctrinal tests that other courts have employed in this context and assumed their application, *see Austin*, 925 F.3d at 1137–38, we have not expressly adopted any of them. Faced with that antecedent question here, we find persuasive the Seventh Circuit's approach to Title IX claims in this context. The Seventh Circuit has found "no need to superimpose doctrinal tests on the statute[.]" *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019). As the Seventh Circuit has explained, such tests "need not be considered because, at bottom, they all ask the same question: whether 'the alleged facts, if true, raise a plausible inference that the university discriminated [against the plaintiff] 'on the basis of sex'?" *Doe. v. Columbia Coll. Chi.*, 933 F.3d 849, 854–55 (7th Cir. 2019) (quoting *Purdue Univ.*, 928 F.3d at 667–68). We adopt that far simpler standard for Title IX claims in this context. *See Doe v. Univ. of the Scis.*, 961 F.3d 203, 209 (3d Cir. 2020) (adopting the Seventh Circuit's

"straightforward pleading standard" as "hew[ing] most closely to the text of Title IX"). With this standard in mind, we turn to Schwake's claim.

## II.  The Sufficiency of Schwake's Title IX Claim

To survive a motion to dismiss, a Title IX plaintiff "need only provide '*enough facts* to state a claim to relief that is plausible on its face.'" *Austin*, 925 F.3d at 1137 (emphasis added) (quoting *Twombly*, 550 U.S. at 570). In assessing the sufficiency of a complaint, "[t]he role of the court . . . is not in any way to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed." *Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016). Sex discrimination need not be the only plausible explanation or even the most plausible explanation for a Title IX claim to proceed. *See Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018).

The district court dismissed Schwake's Title IX claim with prejudice by reasoning that a university's aggressive response to sexual misconduct allegations "is [not] evidence of gender discrimination." In doing so, the court ignored many of the allegations in Schwake's complaint that we think are relevant to the sufficiency of the Title IX claim. Hewing to our limited role at this stage, we consider first the allegations of background indicia of sex discrimination, namely, the pressure that the University faced concerning its handling of sexual misconduct complaints and gender-based decisionmaking against men in sexual misconduct disciplinary cases. We then consider the allegations concerning the disciplinary case against Schwake. Considering the combination of these allegations, we conclude that Schwake plausibly alleged gender bias by the University.

## A.  Background Indicia of Sex Discrimination

Schwake argues that the University faced significant pressure that affected how it handled sexual misconduct complaints around the time of the complaint made against him.   He points to a "Dear Colleague" letter that the Department of Education (DOE) sent in 2011 to various colleges and universities across the country regarding the handling of sexual misconduct complaints.[6]  "Other circuits have treated the Dear Colleague letter as relevant in evaluating the plausibility of a Title IX claim" in this context.  *Purdue Univ*., 928 F.3d at 668.  Although we do not disagree that the letter may be relevant, we decline to consider the letter here because the pleadings did not allege it.

Schwake also points to his allegation that in April 2014 the DOE initiated an investigation of the University for possible Title IX violations in the University's handling of sexual misconduct complaints.  As Schwake argues, it is reasonable to infer that such a federal investigation placed tangible pressure on the University.[7]  *See Baum*, 903 F.3d

---

[6]An archived version of the letter is available here: https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.

[7] We reject the University's assertion that Schwake waived this argument.  Although we generally treat arguments not raised in an opening brief as waived, we decline to follow that rule here because the original counsel who filed the opening brief withdrew from representation.  *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) ("We will not . . . review an issue not raised below unless necessary to prevent manifest injustice." (citation omitted)).  Our court appointed pro bono counsel for Schwake, who filed Schwake's supplemental brief that raised this argument in light of the complaint's allegations.

at 586 (recognizing that a defendant university "stood to lose millions in federal aid if the [d]epartment found it non-compliant with Title IX."). It is also "entirely plausible" that such pressure would affect how the University treated respondents in sexual misconduct disciplinary proceedings on the basis of sex. *See Columbia Univ.*, 831 F.3d at 57–58 (finding it "entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault" and "avoid further fanning the criticism" of the university).

Schwake's allegations of a pattern of gender-based decisionmaking against male respondents in sexual misconduct disciplinary proceedings make that inference plausible. He alleged that "[m]ale respondents in student disciplinary proceedings involving alleged sexual harassment and misconduct cases at [the University]" "are invariably found guilty, regardless of the evidence or lack thereof." Schwake further alleged that he was "aware of recent [University] disciplinary cases against male respondents in alleged sexual misconduct cases who were all found guilty regardless of the evidence or lack thereof." The district court was not free to ignore this non-conclusory and relevant factual allegation. *See Doe v. Miami University*, 882 F.3d 579, 593–94 (6th Cir. 2018) (concluding that a pattern of gender-based decisionmaking may support a Title IX claim).

The University contends that the allegations of gender-based decisionmaking are conclusory because they lack the detail of the allegations in *Doe v. Miami University*, 882 F.3d 579 (6th Cir. 2018). The plaintiff's allegations there included: (1) "every male student accused of sexual

misconduct in the Fall 2013 and Spring 2014 semesters was found responsible for the alleged violation," (2) "nearly ninety percent of students found responsible for sexual misconduct between 2011 and 2014 have male first-names," (3) an affidavit from an attorney who represented "many students in Miami University's disciplinary proceedings" who "describe[d] a pattern of the University pursuing investigations concerning male students, but not female students," and (4) the plaintiff's allegation that the university investigated him rather than the complainant. *Id.* at 593–94.

The absence of this level of detail from Schwake's complaint does not render Schwake's allegation conclusory or insufficient. There is no heightened pleading standard for Title IX claims. *See Austin*, 925 F.3d at 1137 n.4. That point is particularly apt here. It may be difficult for a plaintiff to know the full extent of alleged discrimination in decisionmaking before discovery allows a plaintiff to unearth information controlled by the defendant. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002); *Miami Univ.*, 882 F.3d at 594. Here, we are satisfied that Schwake's allegations of contemporaneous pressure and gender-based decisionmaking establish background indicia of sex discrimination relevant to his Title IX claim.

## B. Schwake's Disciplinary Case

Although Schwake has alleged background indicia of sex discrimination, he "must combine [those allegations] with facts particular to his case to survive a motion to dismiss." *Columbia Coll. Chi.*, 933 F.3d at 855; *Purdue Univ.*, 928 F.3d at 669; *Austin*, 925 F.3d at 1138. Schwake has done so in several respects.

First, Schwake draws our attention to his allegations concerning Dr. Seager's statements following the

University's September 5, 2014 decision.  Dr. Seager's comments that the University had "convicted [Schwake] of sexual assault" and that individuals "should immediately call the police" if they saw Schwake in the building layered criminal overtones onto what was essentially a preliminary finding made by University officials in a school disciplinary case.  Dr. Seager also divulged confidential and privileged information about Schwake's disciplinary case, shared "graphic" details about the alleged assault with other students, and used the case as a classroom prompt about how to handle sexual misconduct complaints.  Dr. Seager made these comments despite the fact that Schwake had the right to appeal the University's decision, thereby ensuring that one version of the sexual misconduct disciplinary case would be the publicly known version.  This alleged conduct reflects an atmosphere of bias against Schwake during the course of the University's disciplinary case.

The University argues that Dr. Seager's statements cannot show that gender bias affected Schwake's sexual misconduct disciplinary case because Dr. Seager was not a decisionmaker.  We disagree.  Statements by "pertinent university officials," not just decisionmakers, can support an inference of gender bias.  *See Yusuf*, 35 F.3d at 715. Dr. Seager's statements are relevant here precisely because he knew privileged and confidential information about the case shortly after the University made a preliminary decision, despite not being a decisionmaker.  As Schwake alleged, Dr. Seager could only have obtained the information he knew from University officials or other persons involved in the case.  Like the procedural irregularities some of our sister circuits have considered when faced with allegations of pressure, the violation of confidentiality by those involved in Schwake's disciplinary case supports an inference of gender bias when considered along with Schwake's

allegations of background indicia of sex discrimination. *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019) ("[W]hen combined with clear procedural irregularities in a university's response to allegations of sexual misconduct, even *minimal* evidence of pressure on the university to act based on invidious stereotypes will permit a plausible inference of sex discrimination." (emphasis in original)); *see also Columbia Univ.*, 831 F.3d at 56–57 (recognizing that procedural irregularities in the university's investigation and handling of a sexual assault complaint raised an inference of bias).

Second, Schwake draws our attention to Dr. Hicks's treatment of him after Schwake's lawyer and Dr. Hicks fashioned a new punishment for Schwake that did not involve suspension. Despite Schwake's repeated protests, Dr. Hicks refused to permit Schwake to appeal the punishment and the University's underlying finding of responsibility on the sexual misconduct Student Code violations. Contrary to the University's suggestion that there can be no showing of gender bias because University policy foreclosed an appeal, gender bias is a plausible explanation in light of the background indicia of sex discrimination. In modifying the punishment, the inference may be drawn that the University sought to show that it took sexual misconduct complaints seriously by punishing Schwake while simultaneously insulating the finding of responsibility from scrutiny in light of the University's policy limiting the availability of an appeal hearing. *See Columbia Univ.*, 831 F.3d at 57.

Dr. Hicks's refusal to permit Schwake to file a harassment complaint against the complainant is also probative of gender bias. Dr. Hicks told Schwake that if he filed a complaint against the complainant, it would result in

"further investigations" and "additional sanctions" against him, including "degree revocation." Dr. Hicks's refusal to permit Schwake to pursue a complaint against the complainant is consistent with the allegations that the University treated male respondents in sexual misconduct disciplinary proceedings differently because of the pending DOE investigation into the University's handling of sexual misconduct complaints. *See Miami Univ*., 882 F.3d at 594 (inferring gender bias where the plaintiff alleged, in part, that the university "faced external pressure from the federal government . . . . to combat vigorously sexual assault on college campuses," which "led [the university] to discriminate against men in its sexual-assault adjudication process"). Absent the sexual misconduct proceeding and the alleged pressure that the University faced regarding its handling of sexual misconduct complaints, the inference may be drawn that Schwake would have been able to pursue his own complaint.

Pointing to *Austin*, the University argues that Dr. Hicks's refusal to let Schwake file his own complaint cannot show gender bias. In *Austin*, the plaintiffs argued that the university was biased against men because it disciplined male students for sexual misconduct but never female students. 925 F.3d at 1138. Our court rejected that argument because the complaint did not allege that female students were accused of sexual misconduct. *Id.* Our court reasoned that, without similarly situated female students, there could be no inference of gender bias. *Id.* However, Schwake does not allege the selective enforcement theory that the plaintiffs there alleged. We have also clarified here that a plaintiff need not satisfy that test to state a Title IX claim. Thus, this aspect of *Austin* is inapposite.

Finally, Schwake's allegations of the University's one-sided investigation support an inference of gender bias. According to Schwake, the University (1) refused to provide him with any written information about the complainant's allegations against him and only orally summarized them; (2) failed to consider his version of the alleged assault or to follow up with the witnesses and evidence he offered in his defense; (3) promised him that it would only consider "one accusation at a time" but then suspended him based on additional violations of the Student Code to which he was not given an opportunity to respond; and (4) ultimately found him responsible for the charges without any access to evidence or considering his exculpatory evidence. These allegations echo some of the irregularities on which our sister courts have relied to sustain a Title IX claim for sex discrimination in the context of a sexual misconduct disciplinary proceeding. *See*, *e.g.*, *Purdue Univ.*, 928 F.3d at 669 (finding sex discrimination plausible based in part on the male plaintiff's allegations that the university's Title IX investigator credited the story of the female accuser over the accused male student although the investigator had never spoken with the accuser); *Baum*, 903 F.3d at 586 (finding sex discrimination based in part on the male plaintiff's allegations that the university appeals board exclusively credited female testimony and rejected all male testimony although the initial investigator had credited the accused male's account).

Considering the combination of Schwake's allegations of background indicia of sex discrimination along with the allegations concerning his particular disciplinary case, we conclude that sex discrimination is a plausible explanation for the University's handling of the sexual misconduct disciplinary case against Schwake. This is sufficient for

Schwake's Title IX claim to proceed beyond the motion to dismiss stage.

## CONCLUSION

We conclude that Schwake stated a Title IX claim against the University because he plausibly alleged gender bias. Accordingly, we reverse and vacate the district court's order and judgment dismissing the claim with prejudice, and remand for further proceedings.

**REVERSED in part, VACATED in part, and REMANDED.** Each side shall bear its own costs.